# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| BRADLEY L. McMORRIS, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>DON ROPER, )<br>)<br>Respondent. ) | Case No. 4:07 CV 1451 RWS(LMB) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the petition of Bradley L. McMorris for a writ of habeas corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

## Procedural History

Petitioner is presently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri, pursuant to the Judgment and Sentence of the Circuit Court of St. Louis County, Missouri. See Respt's Ex. A at 133-36. On October 26, 2001, following a jury trial, petitioner was found guilty of thirteen counts of first-degree statutory sodomy and two counts of sexual misconduct, and sentenced to a total of seventy years imprisonment. See id.

Petitioner raised the following four points on direct appeal of his convictions: (1) the trial court abused its discretion in allowing expert testimony regarding the disclosure process of sexually abused children and about the Child Sexual Abuse Accommodation Syndrome in violation of petitioner's due process rights in that they vouched for the truthfulness of the victim's

1

accusations; (2) the trial court abused its discretion in permitting Dr. Monteleone to testify that young children sometimes do not know when they are penetrated vaginally and plainly erred in permitting the prosecutor to argue that the victim's testimony was corroborated by the medical evidence in violation of petitioner's due process rights; (3) the trial court abused its discretion in excluding petitioner's exhibits in violation of petitioner's due process rights when the exhibits were admissible as business records and under the "residual hearsay" exception; and (4) the trial court abused its discretion in denying petitioner all records of the Division of Family Services regarding investigation of hotline calls against the victim's mother in violation of petitioner's due process rights in that the records were necessary to corroborate petitioner's defense. See Respt's Ex. C. The Missouri Court of Appeals for the Eastern District of Missouri affirmed petitioner's convictions on November 26, 2002. See Respt's Ex. F.

On May 7, 2003, petitioner filed a pro se motion to vacate, set aside, or correct the judgment of the Circuit Court of St. Louis County, Missouri, pursuant to Missouri Supreme Court Rule 29.15. See Respt's Ex. H at 4-17. On September 9, 2003, after appointment of counsel, petitioner filed an amended motion. See id. at 21-47. Petitioner argued that he received ineffective assistance of counsel for the following reasons: (1) trial counsel failed to produce school records to challenge the victim's testimony that petitioner promised to stop molesting her if she did better in school; (2) appellate counsel failed to raise the issue of the sufficiency of the evidence to convict petitioner where the evidence was vague as to time and place; and (3) trial counsel failed to object when the State improperly commented on the evidence during argument. See id. An evidentiary hearing was held on February 6, 2000, at which petitioner, trial counsel, and appellate counsel testified. See Respt's Ex. I. Petitioner's motion was denied on August 29,

2005. See Respt's Ex. H at 48-57.

Petitioner raised two points on appeal from the denial of post-conviction relief. See Respt's Ex. J. Petitioner first argued that the motion court clearly erred in denying his post-conviction relief motion because he was denied effective assistance of counsel when appellate counsel failed to challenge the sufficiency of the evidence where the complaining witness was vague about the time and place of the incidents. See id. In his second point, petitioner argued that the motion court clearly erred in denying his motion because he was denied effective assistance of counsel when trial counsel failed to object to repeated inappropriate comments by the State during closing argument. See id. The Missouri Court of Appeals for the Eastern District of Missouri affirmed the motion court's denial of post-conviction relief on January 23, 2007. See Respt's Ex. L.

On August 15, 2007, petitioner filed a pro se petition for a writ of habeas corpus, in which he raises three grounds for relief. (Doc. No. 1). In his first ground for relief, petitioner argues that the State violated the Due Process Clause by failing to present sufficient evidence to differentiate the multiple offenses he was charged with committing. In his second ground for relief, petitioner contends that the State violated the Due Process Clause because the prosecutor made "inappropriate comments, bolstering and testimony." In his third ground for relief, petitioner argues that the prosecutor made many unsubstantiated assertions, in particular that petitioner promised to stop sexually abusing the victim if her grades got better. Petitioner also contends that the victim perjured herself by testifying that petitioner told her if her grades got better, he would stop sexually abusing her. On November 13, 2007, respondent filed a Response to Order to Show Cause, in which he argues that petitioner's grounds for relief are procedurally

barred and fail on their merits. (Doc. No. 11). Petitioner has also filed a Traverse, in which he provides further argument in support of his petition. (Doc. No. 15).

**Facts**

Viewed in the light most favorable to the verdict, the evidence adduced at trial revealed the following:

Shanel Kahn had four children: sixteen-year-old Chaundra; thirteen-year-old Anthony; C.K., who was ten at the time of the incident at issue; and seven-year-old Clarence. (Respt's Ex. B at 389). Ms. Kahn had a romantic relationship with petitioner from sometime in 1995 until November 8, 2000. (Id. at 389-390). Over the course of that time, petitioner spent a great deal of time with the children and was the primary care-giver of the children at times. (Id. at 390-91). The children called petitioner "dad." (Id. at 451). Petitioner occasionally took the children to his grandmother's home at 4211 Ravenwood in St. Louis County. (Id. at 393-94). In April 1999, Ms. Kahn went to Washington, Missouri for drug rehabilitation. (Id. at 399). Petitioner had custody of the children during this time. (Id.).

C.K. testified that, during the period when petitioner was with the children, he touched C.K. on her chest, her "behind," and her "private." (Id. at 451-52). Petitioner touched her chest with his hands and mouth. (Id. at 453). Petitioner stuck his finger in C.K.'s anus on at least three separate occasions. (Id. at 453-54). Petitioner did this because C.K. refused to put petitioner's penis in her mouth. (Id. at 455).

C.K. testified that, on other occasions, petitioner put his penis in her mouth. (Id. at 455-57). At times, petitioner would come down to the basement at the Ravenwood house, call C.K. into another room, unzip his pants, and pull his penis out. (Id. at 458). Petitioner told C.K. that

4

she "knew what to do." (Id.). Petitioner put C.K.'s hands on his penis and moved it up and down. (Id.). Petitioner had a callous or sore on the bottom of his penis. (Id. at 395). C.K. noticed the bump because it would rub against her bottom teeth when petitioner placed his penis in her mouth. (Id. at 460).

C.K. was at the Ravenwood house almost every weekend in 1999 and 2000 and petitioner put his penis in her mouth "every chance he got." (Id. at 462). Sometimes he would ejaculate, and he would ask C.K. to swallow it. (Id.). These events occurred before, during, and after Ms. Kahn was in rehab in Washington and took place in every room of the Ravenwood house except the kitchen. (Id. at 488, 458). This continued to occur around the time of C.K.'s birthday on June 5, 2000. (Id. at 489).

C.K. testified that, while she was living on Baden Street, petitioner went in the bathroom and called her into the room. (Id. at 466). Petitioner told her to kneel and lick his penis. (Id.). On another occasion, petitioner rubbed his hand against her vagina while she was sleeping with her clothes on. (Id.). Petitioner did this so hard that C.K. awoke. (Id.).

Petitioner promised C.K. that if she did better in school, he would stop touching her in places she did not like. (Id. at 469). C.K. testified that, although she improved her grades, petitioner did not keep his promise and continued to touch her. (Id.).

Petitioner told C.K. to never tell anyone about what he was doing to her. (Id. at 470). Petitioner told C.K. that he would beat her mother if she told anyone. (Id. at 489).

On November 8, 2000, a family meeting was held at Gail Thurman's apartment on N. Kingshighway in the City of St. Louis. (Id. at 377-78, 395). Ms. Thurman is the aunt of Ms. Kahn and the great-aunt of C.K. (Id. at 376). The meeting was held to discuss issues between

5

petitioner and C.K.'s sister, Chaundra.  (Id.).  Present at the meeting were Ms. Thurman; her boyfriend, Steve Hodges; Ms. Kahn; petitioner; Chaundra; and the three younger children, including C.K.  (Id. at 378).  The younger children were in the bedroom with the door closed.  (Id. at 378, 387).

At some point during the meeting, Ms. Thurman left the living room, went to the bathroom, and then went into her bedroom.  (Id. at 379).  When she walked into her bedroom, she saw C.K. on the floor, stretched out on her stomach, crying.  (Id.).  Ms. Thurman testified that C.K. appeared extremely upset.  (Id.).  Ms. Thurman asked C.K. why she was crying and C.K. told her she was crying because of a problem she had with petitioner.  (Id. at 379-80).  Ms. Thurman told C.K. to stay there and Ms. Thurman went out to the living room to get Ms. Kahn.  (Id. at 380).  Petitioner went into the bedroom before Ms. Khan did.  (Id. at 380, 388).

Ms. Thurman told Ms. Kahn that C.K. was upset because of a problem she had with petitioner, and Ms. Kahn went into the bedroom.  (Id. at 396).  C.K. was crying and was very upset.  (Id.).  Ms. Kahn brought C.K. into the living room and told her that she could tell her what was going on.  (Id.).  Petitioner was also in the living room, sitting in a chair next to Ms. Kahn.  (Id. at 407).  C.K. told Ms. Kahn that petitioner touches her "in places she doesn't like."  (Id. at 397).  Ms. Kahn asked C.K. where petitioner had touched her and C.K. said that petitioner had touched her "private parts."  (Id.).

At that point, Ms. Kahn took C.K. out of the living room and back to the bedroom.  (Id. at 398).  Ms. Kahn asked C.K. if anything else had happened.  (Id.).  C.K. said that petitioner would make her put his penis in her mouth.  (Id.).  Ms. Kahn asked C.K. to describe petitioner's penis and C.K. described petitioner's penis, including the sore or callous.  (Id.).  Ms. Kahn asked

6

petitioner to leave and he did. (Id.). The police were called after petitioner left. (Id.).

Sergeant Guinn of the St. Louis County police reported to Ms. Thurman's apartment and spoke with C.K., Ms. Kahn, and Ms. Thurman. (Tr. 425-26). Sergeant Guinn made arrangements for C.K. to be interviewed at the Child Advocacy Center. (Id. at 426). C.K. was interviewed by Tracy Zimmerman at the Child Advocacy Center on November 14, 2001. (Id. at 418, 427).

Sergeant Guinn arrested petitioner on November 15, 2001. (Id. at 428).

Dr. James Monteleone performed a physical examination of C.K. on November 20, 2000. (Id. at 579). C.K.'s vaginal opening was enlarged and there was a lack of hymenal tissue on her right side, an indication of hymenal penetration. (Id. at 580-81). The hymenal opening was also enlarged. (Id. at 585-86).

The only evidence petitioner presented was that a DFS hotline call had been made about Ms. Kahn on November 5, 2001, three days before C.K. reported that petitioner had been abusing her. (Id. at 643).

## **Discussion**

**I.  Standard of Review**

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

7

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if "the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." 529 U.S. at 413, 120 S.Ct. 1523. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." <u>Id.</u> Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Id.</u> at 409, 120 S.Ct. 1521. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410, 120 S.Ct. 1522.

## II. **Procedural Default**

Respondent contends that petitioner has procedurally defaulted all three of his grounds for relief. It is well-established that the procedural default rule requires a habeas petitioner to pursue all available avenues of relief in the state courts before the federal courts can consider the claim. <u>See</u> 28 U.S.C. § 2254(b); <u>Duvall v. Purkett</u>, 15 F.3d 745, 746 (8th Cir. 1994). In addressing this

issue, a federal court must give deference to state courts and should place great importance on state procedural rules. See Buckley v. Lockhart, 892 F.2d 715, 718 (8th Cir. 1989). By virtue of these considerations, "[a] federal court can consider the merits of a habeas corpus petition only when the prisoner has 'fairly presented to the state courts the substance of his [or her] federal habeas corpus claim.'" Id. (quoting Martin v. Solem, 801 F.2d 324, 333 (8th Cir. 1986)(internal citations omitted). To avoid procedural default, "Missouri procedure requires that a claim be presented 'at each step of the judicial process.'" Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)(quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)), cert. denied, 513 U.S. 983, 115 S. Ct. 462, 130 L.Ed.2d 370 (1994).

In this case, each of petitioner's grounds for relief alleges due process violations due to conduct that occurred at trial. Petitioner, however, failed to raise grounds two and three in his motion for new trial and failed to raise grounds one, two, or three in his direct appeal. As such, petitioner's grounds for relief are procedurally barred in federal court.

In cases of procedural default, federal courts are barred from reaching the merits of the defaulted ground absent a showing of both 'cause' and 'actual prejudice' resulting from the alleged constitutional violations. See Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977). A petitioner must "show that some objective factor external to the defense impeded counsel [or petitioner's] efforts to comply with the State's procedural rule" in order to show "cause" for procedural default. Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). "Cause" can be demonstrated by either "a showing that the factual or legal basis for a claim was not reasonably available to counsel" or by a showing that interference by officials made compliance impracticable. Id. If a petitioner cannot show

9

'cause' for the procedural default, then the court need not determine whether actual prejudice has resulted. See Leggins v. Lockhart, 822 F.2d 764, 768 (8th Cir. 1987). In the present case, petitioner alleges no cause for his failure to raise his claims before the state courts.

To the extent Petitioner alleges ineffective assistance of direct appeal counsel should excuse his procedural default as to his first ground for relief, the Eighth Circuit has held that "[i]neffective assistance of trial or appellate counsel may be cause excusing a procedural default." Williams v. Kemna, 311 F.3d 895, 897 (8th Cir. 2002) (citing Murray, 477 U.S. at 491-92, 106 S.Ct. 2647). "However, in order to urge ineffective assistance as cause excusing a procedural default, the federal habeas petitioner must have properly raised the ineffectiveness claim in state court." Id. (citing Edwards v. Carpenter, 529 U.S. 446, 450-53, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000); Tokar v. Bowersox, 198 F.3d 1039, 1051 n. 13 (8th Cir.1999)). Petitioner raised the claim that direct appeal counsel was ineffective for failing to raise the sufficiency argument in his post-conviction relief motion and in his appeal from the denial of post-conviction relief. As such, the court finds that petitioner's allegation of ineffective assistance of direct appeal counsel excuses his procedural default of his first ground for relief.

A federal habeas corpus court may also reach the merits of procedurally defaulted claims where the petitioner can demonstrate that a "miscarriage of justice" exception applies. See Murray, 477 U.S. at 496, 106 S. Ct. 2649. This narrow exception is limited to extraordinary circumstances where actual innocence can be demonstrated. See id. The petitioner must show that constitutional violation "probably resulted" in the conviction of an innocent person. See Schlup v. Delo, 513 U.S. 298, 326-29, 115 S. Ct. 851, 867-68, 130 L. E.2d 808 (1995). However, a "bare, conclusory assertion" that a petitioner is actually innocent is insufficient to

10

excuse a procedural default. Weeks v. Bowersox, 119 F.3d 1342, 1352, 53 (8th Cir. 1997).

Petitioner does claim that he is actually innocent. Petitioner, however, offers no evidence to support this claim. Petitioner's bare assertion that he is actually innocent is not sufficient to establish actual innocence and justify a review of his defaulted claims. Thus, petitioner has procedurally defaulted his second and third grounds for relief.

**III.    Petitioner's Claims**

As previously stated, petitioner raises three grounds for relief. The undersigned will discuss petitioner's grounds for relief in turn.

**1.    Ground One**

In his first ground for relief, petitioner argues that the State violated the Due Process Clause by failing to present sufficient evidence to differentiate the multiple offenses he was charged with committing.

Although petitioner did not raise this claim in his direct appeal, he argued in his post-conviction relief motion that appellate counsel was ineffective for failing to raise this claim. See Respt's Ex. H at 31. The Missouri Court of Appeals rejected this argument, finding that petitioner's sufficiency claim lacked merit. The Court stated held as follows regarding petitioner's sufficiency claim:

> The law supports [petitioner's] appellate counsel's argument. First degree statutory sodomy requires two elements, act and age: 'A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old.' Section 556.062.1 RSMo. 1996. Time and place of intercourse are not elements of the crime. In addition, the State does not assume the burden of proving date and time in sex offense cases merely by placing them in the verdict-directing instruction. State v. Carney, 195 S.W.3d 567, 571 (Mo. App. S.D. 2006).
> Here, having been charged with 13 counts of first-degree statutory sodomy,

> [petitioner] alleges that his victim failed to 'differentiate the times and places of the different counts.' [Petitioner] does not allege that the evidence was insufficient to show he committed deviate sexual intercourse or that the evidence was insufficient to show his victim's age, the necessary elements of the crime. Because the State did not need to prove time or place, [petitioner's] argument that appellate counsel should have argued the sufficiency of the evidence on appeal is misplaced.
>
> Moreover, [petitioner's] assertion is further undermined by case law in which courts have rejected contentions similar to his in the context of indictments. In <u>State v. Burch</u>, 740 S.W.2d 293 (Mo. App. E.D. 1987), this Court denied a defendant's claim that it was error for an indictment to list only a range of dates over which abuse occurred. This Court stated:
>> Because time is not essential to the crime of sodomy, and in recognition of the impossibility of ascertaining specific dates in cases of sexual abuse of children, especially where there is a continuous series of abusive acts, the courts have consistently rejected [defendant's argument that an indictment may not use a date range] ...absent an affirmative showing of prejudice.
>
> <u>Id.</u> at 296. In the spirit of this analysis, [petitioner's] counsel properly chose not to contest the sufficiency of the evidence supporting [petitioner's] conviction on appeal.

Respt's Ex. L at 2-4. The Missouri Court of Appeals properly rejected petitioner's claim that the State failed to present sufficient evidence to differentiate the multiple offenses with which he was charged.

To the extent that petitioner is making a general allegation that the evidence presented by the State was insufficient to support his convictions, this claim also fails. The standard for reviewing the sufficiency of the evidence is set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In <u>Jackson</u>, the United States Supreme Court held that the appropriate inquiry under due process for reviewing the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. 2789. Further, "[t]he state is 'not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.' " <u>Flieger v. Delo</u>, 16 F.3d 878, 883 (8th Cir. 1994) (quoting <u>Perez v.</u>

12

Groose, 973 F.2d 630, 634 (8th Cir. 1992)). The federal court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994). This Circuit has "recognized that the verdict 'may be based in whole or in part on circumstantial evidence.'" Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996)).

A review of the record reveals that the evidence adduced at trial was clearly sufficient to support a guilty verdict on all charges. Statutory Sodomy in the First Degree is defined by Missouri Revised States § 566.062, which, in pertinent part, states:

> 1. A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old.

Mo. Rev. Stat. § 566.062.1 (1998). "Deviate sexual intercourse" is defined as:

> any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however, slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person.

Mo. Rev. Stat. § 566.010(1) (1998).

Sexual Misconduct Involving a Child is defined by Missouri Revised Statutes § 566.083, which provides, in relevant part:

> 1. A person commits the crime of sexual misconduct involving a child if the person:
> ***
> (2) Knowingly exposes the person's genitals to a child less than fourteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child;

Mo. Rev. Stat. § 566.083(2) (1998).

The victim, C.K., testified that petitioner exposed his penis and placed it in her mouth on

13

many occasions. Respt's Ex. B at 455-58, 466. Specifically, C.K. testified that petitioner put his penis in her mouth "every chance he got," when she stayed at the Ravenwood house on the weekends in 1999 and 2000. Id. at 462. C.K. also testified that petitioner inserted his finger in her anus on at least three occasions. Id. at 453-54. The victim was ten years old at the time of the abuse. Id. at 449. Thus, a rational juror could find from the evidence presented at trial the essential elements of thirteen counts of Statutory Sodomy in the First Degree and two counts of Sexual Misconduct Involving a Child.

Accordingly, the undersigned recommends that petitioner's first ground for relief be denied.

**2.     Ground Two**

In her second ground for relief, petitioner argues that the State violated the Due Process Clause because the prosecutor made "inappropriate comments, bolstering and testimony." Petition at p. 7. The undersigned has already found that petitioner has procedurally defaulted this ground for relief. This claim fails on its merits as well.

To prevail on a due process claim based on comments by the prosecutor, a petitioner must show that the prosecutor's comments "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Kellogg v. Skon, 176 F.3d 447, 451 (8th Cir. 1999)(quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987)). See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). "Under this standard, a petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different.'" Kellogg, 176 F.3d at 451 (quoting Hamilton, 809 F.2d at 470). In

14

determining whether the prosecutor's argument rendered the trial fundamentally unfair, a federal habeas court must consider the totality of the circumstances. See id.

In his petition, petitioner points to no specific comments by the prosecutor that he found objectionable. In his Traverse, petitioner argues that the prosecutor introduced photographs of the basement stairs at the Ravenwood house and referred to the basement as a "dark and scary place." Traverse at p. 6. Petitioner contends that the prosecutor's comments about the basement were made to inflame the jurors.

During closing argument, the prosecutor stated the following:

> You're sitting here looking at the kind of man who can get a child alone in a dark, dank place in that basement at 4211 Ravenwood in Pine Lawn and subject her to the things he subjected her to, placing his penis in her mouth, masturbating in front of her, having her place her hands on his penis, sticking his finger in her anus, bullying her, intimidating her.

Respt's Ex. B at 655.

Petitioner cannot demonstrate that the comments of the prosecutor, about the basement of the Ravenwood house or otherwise, were so egregious that they fatally infected the trial. The prosecutor's comments were based on the evidence that was presented at trial. Further, in light of the overwhelming evidence against petitioner, the prosecutor's statement had no effect on the outcome of the trial. Thus, petitioner's claim lacks merit.

Accordingly, the undersigned recommends that petitioner's second ground for relief be denied.

**3.     Ground Three**

In his third ground for relief, petitioner argues that the prosecutor made many unsubstantiated assertions, in particular that petitioner promised to stop sexually abusing the

15

victim if her grades got better. Petitioner also contends that the victim perjured herself by testifying that petitioner told her if her grades got better, he would stop sexually abusing her. He claims that the victim's school records would have proved that the victim perjured herself. The undersigned has already found that petitioner has procedurally defaulted this ground for relief. This claim fails on its merits as well.

The victim testified as follows regarding the promise petitioner made her:

> [Petitioner] made a promise to me that if I did better in school he would stop touching me in places that I didn't like it. Then I got better in school, but he broke his promise and kept messing with me in places I didn't like.

Respt's Ex. B at 469. During closing argument, the prosecutor referred to this "deal" between petitioner and the victim. Respt's Ex. B at 665. The prosecutor's statement regarding the agreement was supported by the victim's testimony and was not improper.

Petitioner also claims that the victim perjured herself. The government may not deliberately present false evidence at trial or allow it to go uncorrected. See <u>Giglio v. United States</u>, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). To establish a due process violation based on the prosecutorial use of false testimony, petitioner must show: (1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict. <u>United States v. Bass</u>, 478 F.3d 948, 951 (8th Cir. 2007).

In this case, there is no evidence available in the record that the victim perjured herself. Similarly, there is no evidence that the prosecution knew or should have known that C.K. lied. Further, even if C.K. did lie about fulfilling her end of the deal by improving her grades as

petitioner suggests, there is no reasonable likelihood that the perjured testimony could have affected the jury's verdict.

Accordingly, the undersigned recommends that petitioner's third ground for relief be denied.

## IV.     **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)); Tokar v. Bowersox, 1 F. Supp.2d 986, 1016 (E.D. Mo. 1998). In this case, petitioner has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no certificate of appealability be issued.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the petition of Bradley McMorris for a writ of habeas corpus under 28 U.S.C. § 2254 be **denied.**

**IT IS FURTHER RECOMMENDED** that no certificate of appealability be issued.

The parties are advised they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this  5th  day of March, 2010.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE